IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS GARBUTT,

                    Petitioner,                 No. CIV S-09-2505 KJM DAD P

     vs.

JOHN W. HAVILAND, et al.,

                  Respondent.          FINDINGS & RECOMMENDATIONS

_____/

          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises several challenges to the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at his third parole consideration hearing held on May 29, 2007.  The matter has been fully briefed by the parties and is submitted for decision.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

I.  Procedural Background

          Petitioner is confined pursuant to a 1984 judgment of conviction entered against him in the Los Angeles County Superior Court following his guilty plea to first degree murder with use of a firearm.  (Pet., Ex. D.)  Pursuant to that conviction, petitioner was sentenced to twenty-seven years to life in state prison.  (Id.)

1

1    The parole consideration hearing that is placed at issue by the instant federal

2 habeas petition was held on May 29, 2007.  (Pet., Ex. H.)  Petitioner appeared at and participated

3 in the hearing.  (Id. at 3, et seq.)  Following deliberations held at the conclusion of the hearing,

4 the Board panel announced their decision to deny petitioner parole for three years as well as the

5 reasons for that decision.  (Id. at 71-81.)

6    Petitioner challenged the Board's 2007 decision in a petition for writ of habeas

7 corpus filed in the Los Angeles County Superior Court.  (Answer, Ex. 2.)  That court found there

8 was sufficient evidence to support the Board's finding that petitioner was unsuitable for parole,

9 but found that the evidence was insufficient to support the Board's deferral of petitioner's next

10 parole consideration hearing for three years.  (Id.)  The Los Angeles County Superior Court

11 ordered the Board to conduct a new hearing to determine the length of petitioner's parole denial.

12 (Id.)  The Board appealed this decision to the California Court of Appeal for the Second

13 Appellate District.  (Answer, Ex. 3.)  By order filed April 21, 2009, the California Court of

14 Appeal reversed the Los Angeles County Superior Court's decision, concluding that sufficient

15 evidence supported both the Board's decision finding petitioner unsuitable for parole, and also its

16 decision to defer petitioner's next parole suitability hearing for three years.  (Id.)

17    On May 14, 2009, petitioner filed another petition for writ of habeas corpus in the

18 California Court of Appeal challenging the Board's 2007 decision finding him unsuitable for

19 parole.  (Answer, Ex. 4.)   In that petition, petitioner claimed that the Board's decision violated

20 his right to due process and the terms of his plea agreement.  (Id.)  The California Court of

21 Appeal denied that petition, citing the decisions in In re Lawrence, 44 Cal.4th 1181 (2008) and In

22 re Shaputis, 44 Cal.4th 1241 (2008).  (Answer, Ex. 5.)  On June 25, 2009, petitioner filed a

23 petition for review in the California Supreme Court.  (Answer, Ex. 6.)  That petition was

24 summarily denied.  (Answer, Ex. 7.)

25    On September 8, 2009, petitioner filed his federal application for habeas relief in

26 this court.  Therein, petitioner contends that the Board's 2007 decision to deny him parole, and

2

1   its decision to defer his next parole suitability hearing for three years, was not supported by

2   "some evidence" that he posed a current danger to society if released from prison, as required

3   under California law.  (Pet. at 5-1; Memorandum of Points and Authorities in Support of Petition

4   (hereinafter P&A) at 5-6, 13-24.)  Petitioner also claims that the Board's unfavorable suitability

5   decision violated the terms of his plea agreement.  (Pet. at 5-1; P&A at 5-12.)

6   II.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

7           An application for a writ of habeas corpus by a person in custody under a

8   judgment of a state court can be granted only for violations of the Constitution or laws of the

9   United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

10   interpretation or application of state law.  <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct.

11   13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146,

12   1149 (9th Cir. 2000).

13           Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

14   habeas corpus relief:

15           An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall

16         not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the

17         claim -

18           (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as

19         determined by the Supreme Court of the United States; or

20           (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the

21         State court proceeding.

22           For purposes of applying § 2254(d)(1), "clearly established federal law" consists

23   of holdings of the United States Supreme Court at the time of the state court decision.  <u>Stanley v.</u>

24   <u>Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06

25   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

26   /////

3

1  clearly established and whether a state court applied that law unreasonably." <u>Stanley</u>, 633 F.3d at

2  859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).

3          A state court decision is "contrary to" clearly established federal law if it applies a

4  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

5  Court precedent on "materially indistinguishable" facts. <u>Price v. Vincent</u>, 538 U.S. 634, 640

6  (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

7  grant the writ if the state court identifies the correct governing legal principle from the Supreme

8  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]

9  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams</u>, 529 U.S. at 413; <u>Chia v. Cambra</u>, 360

10 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ

11 simply because that court concludes in its independent judgment that the relevant state-court

12 decision applied clearly established federal law erroneously or incorrectly. Rather, that

13 application must also be unreasonable." <u>Williams</u>, 529 U.S. at 412. <u>See also</u> <u>Schriro v.</u>

14 <u>Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Lockyer</u>, 538 U.S. at 75 (it is "not enough that a federal

15 habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

16 the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit

17 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

18 the state court's decision." <u>Harrington v. Richter</u>, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

19 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

20 obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

21 ruling on the claim being presented in federal court was so lacking in justification that there was

22 an error well understood and comprehended in existing law beyond any possibility for fairminded

23 disagreement." <u>Harrington</u>,131 S. Ct. at 786-87.

24 _____

25      [1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

26  presented in the state court proceeding." <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011)
    (quoting <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004)).

1    If the state court's decision does not meet the criteria set forth in § 2254(d), a

2  reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v.

3  Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

4  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

5  of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

6  considering de novo the constitutional issues raised.").

7    The court looks to the last reasoned state court decision as the basis for the state

8  court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

9  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

10  from a previous state court decision, this court may consider both decisions to ascertain the

11  reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

12  banc).  "When a federal claim has been presented to a state court and the state court has denied

13  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

14  of any indication or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at

15  784-85.  This presumption may be overcome by a showing "there is reason to think some other

16  explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker,

17  501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

18  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

19  determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860;

20  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is

21  not de novo review of the constitutional issue, but rather, the only method by which we can

22  determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at

23  853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

24  "showing there was no reasonable basis for the state court to deny relief."  Harrington, 131 S. Ct.

25  at 784.

26  /////

1    When it is clear, however, that a state court has not reached the merits of a

2  petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

3  federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

4  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

5  2003).

6  III.  Scope of Review Applicable to Due Process Challenges to the Denial of Parole

7    The Due Process Clause of the Fourteenth Amendment prohibits state action that

8  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

9  due process violation must first demonstrate that he was deprived of a liberty or property interest

10  protected by the Due Process Clause and then show that the procedures attendant upon the

11  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

12  490 U.S. 454, 459-60 (1989).

13    A protected liberty interest may arise from either the Due Process Clause of the

14  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

15  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

16  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

17  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

18  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

19  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

20  person to be conditionally released before the expiration of a valid sentence.").  However, a

21  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

22  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

23  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

24    California's parole scheme gives rise to a liberty interest in parole protected by the

25  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

26  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.

6

1   Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in

2   this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639

3   F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that

4   California law creates a liberty interest in parole.")  In California, a prisoner is entitled to release

5   on parole unless there is "some evidence" of his or her current dangerousness.  In re Lawrence,

6   44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

7            In Swarthout, the Supreme Court reviewed two cases in which California

8   prisoners were denied parole - in one case by the Board, and in the other by the Governor after

9   the Board had granted parole.  Swarthout, 131 S. Ct. at 860-61.  The Supreme Court noted that

10  when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment

11  requires fair procedures, "and federal courts will review the application of those constitutionally

12  required procedures."  Id. at 862.  The Court concluded that in the parole context, however, "the

13  procedures required are minimal" and that the "Constitution does not require more" than "an

14  opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

15  Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

16  decisions that went beyond these minimal procedural requirements and "reviewed the state

17  courts' decisions on the merits and concluded that they had unreasonably determined the facts in

18  light of the evidence."  Swarthout, 131 S. Ct. at 862.  In particular, the Supreme Court rejected

19  the application of the "some evidence" standard to parole decisions by the California courts as a

20  component of the federal due process standard.  Id. at 862-63.[2]  See also Pearson, 639 F.3d at

21  1191.

22

23            [2] In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four
24  years the Ninth Circuit had consistently held that in order to comport with due process a state
    parole board's decision to deny parole had to be supported by "some evidence," as defined in
25  Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v.
    Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d
26  895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole
    rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

1    IV.  Petitioner's Claims

2         A.  Due Process

3              As noted above, petitioner seeks federal habeas relief on the grounds that the

4    Board's 2007 decision to deny him parole and to defer his next parole consideration hearing for

5    three years, and the findings upon which those decisions were based, were not supported by

6    "some evidence" as required under California law.  However, under the Supreme Court's

7    decision in Swarthout this court may not review whether California's "some evidence" standard

8    was correctly applied in petitioner's case.  131 S. Ct. at 862-63; see also Miller v. Oregon Bd. of

9    Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court

10   held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process

11   right is procedural, and entitles a prisoner to nothing more than a fair hearing and a statement of

12   reasons for a parole board's decision[.]"); Roberts v. Hartley, 640 F.3d 1042, 1045-46 (9th Cir.

13   2011) (under the decision in Swarthout, California's parole scheme creates no substantive due

14   process rights and any procedural due process requirement is met as long as the state provides an

15   inmate seeking parole with an opportunity to be heard and a statement of the reasons why parole

16   was denied); Pearson, 639 F.3d at 1191 ("While the Court did not define the minimum process

17   required by the Due Process Clause for denial parole under the California system, it made clear

18   that the Clause's requirements were satisfied where the inmates 'were allowed to speak at their

19   parole hearings and to contest the evidence against them, were afforded access to their records in

20   advance, and were notified as to the reasons why parole was denied.'")

21             The federal habeas petition pending before the court in this case reflects that

22   petitioner was represented by counsel at his 2007 parole suitability hearing.  (Pet., Ex. H, at 4.)

23   As set forth above, the record also establishes that at that hearing petitioner was given the

24   opportunity to be heard and received a statement of the reasons why parole was denied by the

25   Board panel and why his next parole suitability hearing was being deferred for three years.  That

26   is all the process that was due petitioner under the Constitution.  Swarthout, 131 S. Ct. 862; see

8

1   also <u>Miller</u>, 642 F.3d at 716; <u>Roberts</u>, 640 F.3d at 1045-46; <u>Pearson</u>, 639 F.3d at 1191.  It now

2   plainly appears that petitioner is not entitled to federal habeas relief with respect to his due

3   process claims.  Accordingly, those claims should be rejected.[3]

4                           B.  <u>Breach of Plea Agreement</u>

5           Petitioner also claims that the Board's failure to find him suitable for parole and

6   its refusal to set a release date has resulted in a breach of his plea agreement.  Petitioner explains

7   that he pled guilty to first degree murder and admitted the firearm enhancement in exchange for

8   an agreement by the prosecution to drop the special circumstance allegation and a robbery

9   charge.  (Pet. at 5-3.)  Petitioner alleges that at the time, the trial court informed him that "the

10   purpose of the plea agreement was [to] prevent a sentence of life in prison without possibility of

11   parole or the death penalty."  (<u>Id.</u>)

12           Petitioner argues that, under state law, he could not receive punishment in excess

13   of the sentence prescribed for first degree murder upon his plea of guilty.  (P&A at 6; <u>see</u> Cal.

14   Penal Code § 1192.1).  As a result, "by accepting the plea agreement, the objectively reasonable

15   intent and understanding of all parties was that Petitioner would serve a term of imprisonment as

16   established by the Matrix of Base Terms for First Degree Murder (Matrix) minus conduct credits

17   and be paroled."  (P&A at 6-7.)  Petitioner argues that, pursuant to the Matrix, he is only required

18   /////

19   /////

20

---

21        [3]  In November 2008, California voters passed Proposition 9, the "Victims' Bill of Rights

22   Act of 2008: Marsy's Law," which changed numerous aspects of California's parole system, including the availability and frequency of parole hearings for prisoners not found suitable for

23   parole.  <u>See</u> <u>Gilman v. Davis</u>, 690 F. Supp.2d 1105, 1128 (E.D.Cal. 2010) (granting a preliminary injunction enjoining the enforcement of certain portions of Proposition 9 as to the named

24   plaintiffs on the basis of their Ex Post Facto challenge), <u>rev'd sub. nom.</u>, <u>Gilman v. Schwarzenegger</u>, 638 F.3d 1101 (9th Cir. 2011).  Because petitioner's parole suitability hearing

25   occurred before the passage of Proposition 9, the changes that law made to the California parole system are irrelevant for purposes of the petition now pending before this court.  In any event,

26   petitioner has not raised a claim challenging California's Marsy's Law in his federal habeas petition.

1  to serve a maximum of thirty years in prison.  (Id. at 7-8.)[4]  Petitioner contends that after

2  calculating all of the credits to which he is entitled, he has served more than thirty years in prison

3  and should have received a parole date at his 2007 suitability hearing.  (Id. at 8.)

4          Petitioner also argues that the Board's continued finding that he is not suitable for

5  parole based on the nature of his offense has transformed his sentence into one of life without the

6  possibility of parole, in violation of the holding in Apprendi v. New Jersey, 530 U.S. 466

7  (2000).[5]  (P&A at 9-10.)  In a related argument, petitioner claims the Board violated Apprendi

8  when it determined that his crime of conviction was "heinous, atrocious or cruel," instead of

9  allowing a jury to make that determination.  (Id. at 10.)  He argues that "the effect of the Board's

10  characterization of the convicted offense as 'heinous, atrocious or cruel' was not only to enhance

11  Petitioner's term of confinement beyond the limitations of his plea, but also to heighten the

12  stigma attached to his offense by making it a capital murder."  (Id.)

13          Plea agreements are contractual in nature and are construed using the ordinary

14  rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

15  2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

16  _____

17      [4]  In In re Dannenberg, 34 Cal.4th 1061, 1079 (2005), the California Supreme Court
offered the following explanation concerning the "Matrix":

18
         [T]he Board has adopted regulations covering the various
19       categories of indeterminate life inmates.  One set of these
         regulations applies specifically to noncapital murderers who
20       committed their crimes on or after November 8, 1978. (Cal. Code
         Regs., tit. 15, § 2400 et seq.)  If such a murderer is found suitable
21       to have a parole release date set under section 3041, subdivision
         (a), the regulations specify that the inmate's release date is to be set
22       by calculating a "base term."  (Cal. Code  Regs., tit. 15, § 2403(a).)
         The first step in the calculation is to determine where the particular
23       murder fits, in terms of its relative seriousness, on a bi-axial
         "matrix" of factual variables.  ( Ibid.) The matrix specifies lower,
24       middle, and upper "base terms" for each matrix category.

25      [5]  In Apprendi, the United States Supreme Court determined that the Due Process Clause
of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the
26  penalty for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and
proved beyond a reasonable doubt."  530 U.S. at 490.

1    terms of the plea agreement but must construe any ambiguities against the government.  United

2    States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

3    significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

4    of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York,

5    404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

6    petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

7    970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

8              Petitioner has failed to demonstrate that the Board's 2007 parole suitability

9    decision violated the terms of his plea agreement.  There is nothing in the record which reflects a

10   promise by the prosecutor that petitioner would be released or granted parole at any particular

11   time or before the expiration of his life term.  Petitioner's claim that the Board's failure to find

12   him suitable for parole has transformed his sentence into one of life without the possibility of

13   parole lacks a factual basis and should also be rejected.  Petitioner's indeterminate life sentence

14   has not been changed because petitioner is still eligible for parole.  Petitioner's argument that his

15   sentence may not exceed thirty years is equally unavailing.  The California Supreme Court held

16   in In re Dannenberg that the Board is not required to refer to its sentencing matrices or to

17   compare other crimes of the same type in deciding whether a prisoner is suitable for parole.  34

18   Cal. 4th at 1098.  Essentially, the matrix is irrelevant to making a parole suitability

19   determination.  Instead, the Board ignores the matrix and examines the record to determine

20   whether the prisoner poses a current danger to society.  Id.  In short, this court may not grant

21   federal habeas relief based upon petitioner's unsupported belief that he would be released from

22   prison at a time certain despite his sentence to a maximum term of up to life imprisonment.

23             The decision of the state courts in rejecting petitioner's claims in this regard was

24   not contrary to or an unreasonable application of federal law as set forth above, nor is it based on

25   an unreasonable determination of the facts of this case.  Accordingly, petitioner is not entitled to

26   federal habeas relief on these claims.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the Board), overruled in part by Swarthout, 131 S. Ct. 859 (2011).

DATED: August 5, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
garbutt2505.hc

12